**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**RODERICK WHITE (#723682)**                           **CIVIL ACTION**

**VERSUS**                                       **22-385-SDD-RLB**

**TIM HOOPER, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT**.

Signed in Baton Rouge, Louisiana, on September 10, 2024.

                                           **RICHARD L. BOURGEOIS, JR.**
                                           **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**RODERICK WHITE (#723682)**                 **CIVIL ACTION**

**VERSUS**                                              **22-385-SDD-RLB**

**TIM HOOPER, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* R. Doc. 1. The State has filed an opposition to the petitioner's application. *See* R. Docs. 10 and 11. There is no need for oral argument or for an evidentiary hearing.

The petitioner, Roderick White, challenges his conviction, entered in 2017 in the Nineteenth Judicial District Court for the Parish of Livingston, State of Louisiana, on one count of second-degree murder. The petitioner contends that (1) out-of-court statements were admitted in violation of the Confrontation Clause; (2) that he received ineffective assistance of counsel; (3) the trial court gave an improper Allen charge; (4) that the jury venire was improperly constituted; and (5) there was prosecutorial misconduct.

**Factual Background**

As summarized by the Louisiana First Circuit Court of Appeals, the facts are as follows: On the afternoon of January 6, 2015, Brandon Coleman was driving around the Scenic Highway area in Baton Rouge with three passengers, including the petitioner. Nearby on Walnut Street, Gregory Spears was at his mother-in-law's house, selling CDs out of the trunk of his car. NaQuian Robinson drove up, got out, and bought some CDs from Mr. Spears. As the two men stood there talking, Mr. Coleman drove by and stopped at a nearby carwash. The petitioner got

out of the car, walked over to the two men, and asked Mr. Spears about some CDs. When Mr. Spears turned to look in his trunk, the petitioner pulled a gun and tried to rob Mr. Robinson. The petitioner and Mr. Robinson wrestled over the gun, and Mr. Robinson was shot multiple times.

The petitioner ran down the street and cut through a yard to Chestnut Street, where Mr. Coleman picked him up and drove away. Mr. Robinson got into his car, drove a short distance, and crashed into a fence. His family took him to the hospital, where he died of his wounds that same day. Mr. Spears was unable to identify the shooter. When the police brought Mr. Coleman in for questioning, he implicated the petitioner in Mr. Robinson's shooting. The petitioner did not testify at trial. *See State v. White,* 17-1256 (La. App. 1 Cir. 2/6/28), 243 So.3d 1220.

### Procedural History

After a jury trial, in April of 2017, the petitioner was found guilty of one count of second-degree murder. Motions for Judgment of Acquittal and for New Trial were denied on July 6, 2017. On July 7, 2017, the petitioner was sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence.

Petitioner appealed and his conviction and sentence were affirmed by the First Circuit Court of Appeal on February 16, 2018. The petitioner sought writs which were denied by the Louisiana Supreme Court on January 14, 2019. Petitioner then filed a petition for writ of certiorari in the United States Supreme Court, which was denied on December 9, 2019.

On or about November 12, 2020, the petitioner filed an Application for Post-Conviction Relief. The trial court denied the application on April 28, 2021.

The petitioner then sought writs in the First Circuit Court of Appeal and the Louisiana Supreme Court which were denied on January 11, 2022, and June 1, 2022, respectively. The instant Petition for Writ of Habeas Corpus was filed by the petitioner on June 13, 2022.

**Standard of Review**

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id*. *See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The State asserts that a deferential review of the state court proceedings and findings, as mandated by 28 U.S.C. § 2254(d) and (e), compels the conclusion that all the petitioner's claims

must be rejected. As discussed below, the Court finds that the petitioner's claims are without merit.

## Substantive Review

### *Claims 1, 4, and 5(B)*

### *Admission of Out-of-Court Statements in Violation of the Confrontation Clause*

In Claims 1 and 4, the petitioner asserts that the admission of Brandon Coleman's and Toni Edwards' out-of-court statements violated the Confrontation Clause of the Sixth Amendment. In Claim 5(B), the petitioner asserts that the prosecutor engaged in misconduct by introducing the out-of-court statements of Coleman and Edwards.

### *Statement and Identification by Brandon Coleman*

After the shooting, the shooter got into a 2007 Black Camry and was driven away from the scene. During his investigation, Detective Derrick Evans learned that Coleman was the driver of that vehicle. After locating the vehicle, Detective Evans interviewed Coleman and presented him with a photographic line-up.

Coleman was called as a witness at the trial. Due to memory loss caused by an injury, Coleman could not remember any details from the day in question or his meeting with Detective Evans. Over the vigorous objection of the petitioner's counsel, portions of the video tape interview of Coleman were played. Coleman identified himself in the video and recognized himself signing one or more documents. Coleman did not recognize these documents when they were shown to him in court.

Detective Evans was then recalled as a witness. Over the objection of petitioner's counsel, Detective Evans was allowed to identify the photographic line-up presented to Coleman and Coleman's signed statement. These documents were then admitted and published to the jury.

The Confrontation Clause of the Sixth Amendment affords criminal defendants the right to be confronted with the witnesses against him. In *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004), the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had [ ] a prior opportunity for cross-examination." In *United States v. Owens*, 484 U.S. 554 (1988), a case predating *Crawford*, the Supreme Court held that the introduction of a victim's out-of-court identification of defendant as his assailant, even though the victim admitted at trial that he could not remember seeing his assailant, did not violate the Confrontation Clause. The victim's memory was impaired due to injury, and he was unable to explain during cross-examination the basis for his identification of the assailant in an interview with an FBI agent that was admitted into evidence. The Court emphasized that "the Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Id*. at 559. As noted by the *Owens* Court, the Supreme Court has never held that a Confrontation Clause violation can be founded upon a witness' loss of memory but has expressly left that possibility open in two cases (*California v. Green*, 399 U.S. 149 and *Delaware v. Fensterer*, 474 U.S. 15). The Supreme Court has not reconsidered the *Owens* holding following *Crawford*.

As such, whether there may ever be an instance in which memory loss can inhibit cross-examination to such a degree as to violate the Constitution is still an open question. Therefore, petitioner's argument is not clearly established for habeas purposes. Petitioner has not identified any clearly established federal law to support his argument that the admission of Coleman's interview and photographic line-up identification violated the Confrontation Clause since

Coleman testified at trial and was subject to cross-examination. Accordingly, Petitioner has not demonstrated that he is entitled to relief on this issue.

*Identification by Toni Edwards*

In his opening statement, the prosecutor said, "…two days later, they put together the six-pack lineup and the detective presents it to Toni Edwards. They have a suspect." Detective Evans then testified that Toni Edwards was one of the witnesses brought to the VCU while the scene was still being processed. He was advised by one of the witnesses brought to the VCU that they could identify the shooter if shown a picture of him because the shooter had run past the witness. A photographic line-up was presented to this witness, and the petitioner became the prime suspect for the shooting. Alexandria Edwards, Toni's daughter, testified that Toni saw the shooter run to a black car. According to Alexandria, Toni was outside around the time of the shooting as she had just arrived home.

Toni Edwards died prior to the trial, and the trial court ruled that Toni's identification would not be admissible, but that Detective Evans could testify that a photographic line-up was presented to Toni and the other steps taken in his investigation. Detective Evans identified the photographic line-up presented to Toni, but neither the line up itself nor Toni's selection were admitted into evidence.

In *Crawford v. Washington,* 541 U.S. 36 (2004), the Court held that Confrontation Clause of the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." In *Davis v. Washington*, 547 U.S. 813, 826 (2006), that statements are testimonial when the circumstances indicated that there is no ongoing emergency, and the primary purpose of the interrogation is to establish or prove past events potentially relevant to a

later criminal prosecution. The Court noted, *"When we said in Crawford, supra,* at 53, 124 S.Ct. 1354, that "interrogations by law enforcement officers fall squarely within [the] class" of testimonial hearsay, we had immediately in mind (for that was the case before us) interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator. The product of such interrogation, whether reduced to a writing signed by the declarant or embedded in the memory (and perhaps notes) of the interrogating officer, is testimonial."

In the instant matter, the questioning of Toni Edwards was solely directed at establishing the facts of the shooting in order to identify the shooter. As such, any statements given or identifications made by Toni would have been hearsay barred by the Confrontation Clause if presented at the trial because Toni, who had died prior to the trial, was unavailable and the petitioner had not had an opportunity to cross-examine her.

No statements given or identifications made by Toni were directly introduced into evidence by the testimony of any witness; however, the testimony of Detective Evans combined with the testimony of Alexandria Edwards strongly suggest that Toni Edwards was presented with a photographic lineup and identified the petitioner as the shooter.

Assuming without finding that that the petitioner was deprived of his right to confront Toni Edwards, the Court must determine if the alleged error was harmless. A defendant deprived of the right to confront witnesses against him is entitled to a new trial unless the government proves beyond a reasonable doubt that the error was harmless; that is, that "there was [no] reasonable possibility that the evidence complained of might have contributed to the conviction." *United States v. Alvarado–Valdez,* 521 F.3d 337, 341 (5th Cir.2008) (quoting *Chapman v.*

*California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). Relevant considerations include:

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

*Id.* (quoting *United States v. Rodriguez–Martinez,* 480 F.3d 303, 308 (5th Cir.2007)).

In the instant matter, a number of considerations weigh in favor of finding of harmlessness. The testimonial statements of Toni Edwards were not of much importance to the prosecution's case and were cumulative. Brandon Coleman, the driver of the getaway car, identified the petitioner as the shooter when questioned by the police. His interview with the police was played for the jury and his statement was admitted. Additionally, Toni's testimonial statements were corroborated by the testimony of Alexandria Edwards who testified that her mother had an opportunity to view the petitioner as he ran by. No evidence was presented to contradict Toni's testimonial statements. Moreover, the prosecution's case was strong given the testimony of Brandon Coleman, which was corroborated by other evidence including video surveillance and a scar on the petitioner's leg where Coleman testified that the petitioner had shot himself during the incident. Further, though the petitioner had no opportunity to cross-examine Toni, the petitioner has not identified any particular matter of interest or value that would have been obtained from the same. As such, assuming without finding that the petitioner was deprived of his right to confront Toni Edwards, the alleged error was harmless, and this claim is without merit. As is petitioner's claim that the prosecutor engaged in misconduct by introducing the out-of-court statements of Coleman and Edwards.

*Claim 2*

*Ineffective Assistance of Counsel - Improperly Drawn Jury Venire*

In claim 2 Petitioner asserts that his counsel was ineffective for failing to investigate and challenge the improperly constituted jury venire. In *State v. Cannon*, 2019-590 (La. 4/18/19), 267 So. 3d 585, the Louisiana Supreme Court granted the defendant's Motion to Quash the general venire. Cannon showed that under the system employed in East Baton Rouge Parish, persons born after June 2, 1993, were excluded from the general venire due to an error. The exclusion began in 2011 due to a computer glitch and was not discovered until noticed by defense counsel for Cannon. Petitioner asserts that his venire was tainted by the same flaw and his counsel was ineffective for failing to raise the issue.

A habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id*.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See,* e.g.*, Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the

circumstances, the challenged action might be considered sound trial strategy. *See,* e.g., *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter*, *supra*, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. *Bridge v. Lynaugh*, *supra*, 838 F.2d at 773; *Martin v. McCotter*, *supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington*, *supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter*, *supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 816-17. Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

In the instant matter, the petitioner cannot show his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. For several years the exclusion of certain jurors from the venire was not discovered by the Clerk of

Court or any member of their staff, by any judge in the district or their staff, the district attorney or their staff, or any lawyer who tried a case before a jury in the district – until the defense counsel in *Cannon* noticed a lack of younger jurors in the venire and conducted a review of jury data for certain years. Given the incredible number of professionals who missed the exclusion issue, it cannot be said that petitioner's counsel omitted an obvious and readily available investigatory step.

Nor can the petitioner show he was prejudiced from the alleged error. Any reasonable juror of any age could have found the petitioner guilty based on the evidence adduced at trial. The testimony of only a single witness is sufficient to support a verdict. *See Gordon v. Cain*, 2013 WL 3070858, *15 (E.D. La. June 17, 2013); *Quezada v. Avoyelles Correctional Center*, 15-781, 2015 WL 5061230, at *15 (E.D. La. Aug. 17, 2015). A description of the petitioner was given by two witnesses at or near the scene, and the petitioner was positively identified by Brandon Coleman who was an accessory to the crime. Coleman's statement was corroborated by other evidence including video surveillance and photographs of a scar on the petitioner's leg from where he was shot during the incident and an injury to his eye. As such, any reasonable juror, no matter their age, could have found the petitioner guilty and this claim is without merit.

*Claim 3*

*Allen Charge*

In Claim 3 petitioner asserts that, in response to a question from the jury, the trial judge gave the jury a modified *Allen* charge and lead the jury to believe the court would not accept a non-unanimous verdict. The *Allen* charge stems from the United States Supreme Court's decision in *Allen v. United States*, 164 U.S. 492 (1896). In *Allen*, the court approved of a charge designed to break a jury deadlock and achieve jury unanimity. The main focus of the original *Allen* charge

was that the jury minority, regardless of whether they were for conviction or acquittal, should reconsider the reasonableness of their opinion because it was not shared by a majority of the jury.

The Louisiana Supreme Court has banned the use of the *Allen* charge and subsequent modifications of it. *See State v. Nicholson,* 315 So.2d 639 (La.1975). While the Supreme Court recognized the authority of a trial court to give further instructions to a jury unable to agree upon a verdict, it found the *Allen* charge problematic for two reasons. First, the charge emphasized that the jury had a duty to reach a verdict, implying that the trial judge would not accept a mistrial. Second, when the duty to reach a verdict is coupled with an admonition by the trial judge that those in the minority should rethink their position, there exists an almost overwhelming pressure to conform to the majority's view. *Id.*

In the instant matter the jury posed the following question, "Can there be an undecided vote?" Upon questioning by the trial judge, the juror foreperson clarified that only one juror was undecided, not the jury as a whole. In response to the question, the trial judge reread the following instruction:

> The burden is upon the state to prove the defendant's guilt beyond a reasonable doubt. In considering the evidence, you must give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence. If you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty. Reasonable doubt may arise, both from the evidence, as well as a lack of evidence. So again, if you remember, he's charged with -- excuse me, not armed robbery -- second-degree murder. If you are convinced beyond a reasonable doubt that he is guilty of second-degree murder, then, you should return a verdict of guilty of second-degree murder. If you are not, but you are -- if you are not convinced that he's guilty of second-degree murder, but are convinced beyond a reasonable doubt that he is guilty of manslaughter, then, you should return guilty of manslaughter. If you're not convinced of that, but are convinced of negligent homicide, then, you are to return a verdict of guilty of negligent homicide. If you are not convinced beyond a reasonable doubt as

>to one of those three charges, you must return a verdict of not guilty, each individual person.

As such, the trial judge did not give an *Allen* charge, modified or otherwise. Rather, the trial judge reread the reasonable doubt instruction. Accordingly, this claim is without merit.

### *Claims 5(A) and (C)*

### *Prosecutorial Misconduct*

In Claims 5(A) and (C) petitioner asserts that his trial was fundamentally unfair due to prosecutorial misconduct in the form of violation of the sequestration rule and vouching for the credibility of witnesses. A claim of prosecutorial misconduct is actionable on federal habeas review only when the alleged misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Due process is only offended when the alleged conduct deprived the petitioner of his right to a fair trial. A trial is fundamentally unfair if there is a reasonable probability the verdict might have been different had the trial been properly conducted. *Styron v. Johnson*, 262 F.3d 438, 454 (5th Cir. 2001). Generally, habeas corpus relief is available for prosecutorial misconduct only when the prosecutor's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. *Darden*, 477 U.S. at 181. The conduct must either be so persistent and pronounced, or the evidence so insubstantial that, but for the conduct, no conviction would have occurred. *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985).

    A.  Rule of Sequestration – Recalled Witness

Petitioner asserts that the prosecutor intentionally violated the rule of sequestration by recalling Detective Evans as a witness. Louisiana Code of Evidence article 615 provides that the Court may order that witnesses be excluded from the courtroom and that they refrain from

discussing the facts of the case with anyone other than counsel. However, a case agent is exempt from exclusion. *See* La. C.E. art. 615(B)(2).

Prior to the start of the trial, counsel for the petitioner invoked the rule of sequestration. Detective Evans was named as the State's case agent since he was the lead detective on the case. As such, the Court exempted Detective Evans from the rule of sequestration. *See* R. Doc. 3-14, p. 11-12.

The purpose of a sequestration order is to prevent witnesses from being taught or prompted by each other's testimony, and to prevent fabrication or collusion. *See United States v. Wylie,* 919 F.2d 969, 976 (5th Cir.1990). In the instant matter, there was no violation of the actual rule of sequestration. Even if recalling Detective Evans had violated the rule of sequestration there is no evidence that Detective Evans testimony was affected by the testimony of other witnesses. Nor is there any evidence of fabrication or collusion. As such, this claim is without merit.

### C.    *Vouching for Credibility of Witnesses*

The petitioner asserts that the prosecutor vouched for the credibility of Greg Spears and Brandon Coleman. During closing arguments the prosecution stated, after summarizing the testimony of witness Spears: "You can believe him. I believe you can…As far as what happened, I'm going to rubber stamp that. I submit that to y'all. I think you can believe everything Greg said – every single thing that Greg said…And I submit, again, that you can, in fact, believe that. So, everything he said, take that…." With regards to witness Coleman, the prosecution stated, "I'm going to tell you why I believe Brandon. I believe Brandon because I was in the same situation as Brandon," before telling a story about his youth. The prosecution then stated, "When

Brandon told you he shot himself in the left leg – an oh, by the way, you're looking at the pictures of his shot up left leg, that's why I believe him."

Considering the prosecution's conduct within the context of the entire trial, the Court does not find that such conduct rises to the level of error that rendered the petitioner's trial fundamentally unfair. Pursuant to *Brecht v. Abrahamson*, 507 U.S. 619 (1993), "a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict." *Nixon v. Epps*, 405 F.3d 318, 329-30 (5th Cir. 2005). It is only when the record is so evenly balanced that there is grave doubt as to whether the error had a substantial and injurious effect or influence in determining the jury's verdict that the error is not harmless. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). *See also Anderson v. Warden, Louisiana State Penitentiary*, 2013 WL 1405423, *3 (W.D. La. Mar. 19, 2013) ("[E]rrors in the form of improper prosecutorial comment or jury instructions are subject to harmless error analysis [under *Brecht*] ... which asks whether the error had a substantial and injurious effect or influence in determining the jury's verdict"). Based upon a review of the record, the Court does not find that the prosecutor's comments, evaluated in the context of the entire trial, rendered the petitioner's trial fundamentally unfair. The evidence adduced at trial provided ample evidence of the petitioner's guilt, and the offending comments complained of by the petitioner were not focused upon or emphasized and did not have a substantial injurious effect or influence in determining the verdict.

Based upon the totality of the circumstances in this case, the conduct of the prosecution in seemingly vouching for Spears' and Coleman's credibility was not so persistent and pronounced as to render the petitioner's trial fundamentally unfair, and that the evidence was not so insubstantial that in all probability, but for the prosecutor's remarks, the petitioner would not

have been convicted. While it is true that a prosecutor is not generally allowed to vouch for the credibility of a witness where there is an underlying implication that the prosecutor's statements are based on additional personal knowledge about the witness or about facts not in evidence, such comments are not necessarily improper if it is apparent to the jury that the views are based on an interpretation of the evidence presented at trial rather than on personal knowledge of facts outside the record. *See Nicolos v. Scott*, 69 F.3d 1255 (5th Cir. 1995). *See also Tyler v. Cain*, 2016 WL 1594609, *13 (W.D. La. Mar. 24, 2016), *citing United States v. Ellis*, 547 F.2d 863, 869 (5th Cir. 1977) ("The proper inquiry into this issue should be 'whether the prosecutor's expression might reasonably lead the jury to believe that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt.'") In the instant matter, the prosecution's comments were based on the witnesses' testimony matching the evidence adduced at trial. There was no underlying implication that the prosecutor's statements were based on additional personal knowledge about the witness. As such, this claim is without merit.

## Conclusion

The petitioner has not shown any decision by the state courts that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Nor has the petitioner show any decision that was based on an unreasonable determination of the facts considering the evidence presented in the State court proceeding. As such, the petitioner is not entitled to habeas relief.

## Certificate of Appealability

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus

proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that reasonable jurists would not debate the denial of petitioner's application or the correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## RECOMMENDATION

It is recommended that the petitioner's application for habeas corpus relief be denied and that this proceeding be dismissed with prejudice. It is further recommended that in the event the petitioner pursues an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on September 10, 2024.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**